IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION, | : | HON. JEROME B. SIMANDLE |
| Plaintiff, | : | Civil No. 09-1204 (JBS/JS) |
| v. | : | |
| HOPE NOW MODIFICATIONS, LLC, et al., | : | **OPINION** |
| Defendants, | : | |
| and | : | |
| HOPE NOW MODIFICATIONS, LLC, et al., | : | |
| Third-Party Plaintiffs, | : | |
| v. | : | |
| MICHAEL W. KWASNIK and KWASNIK, RODIO, KANOWITZ and BUCKLEY, P.C., | : | |
| Third-Party Defendants. | : | |

---

APPEARANCES:

Richard D. Gallucci, Jr., Esq.
Oliver D. Griffin, Esq.
SPECTOR GADON AND ROSEN, P.C.
1635 Market Street, 7th Floor
Philadelphia, Pennsylvania 19103
        Attorney for Third Party Plaintiffs Hope Now Modifications,
        LLC, Hope Now Financial Services, Corp, Nick Puglia, and
        Salvatore Puglia

Matthew S. Wolf, Esq.
Hercules Pappas, Esq.
PAPPAS & WOLF, LLC
423 White Horse Pike
Haddon Heights, New Jersey 08035

Attorney for Third Party Defendants Michael W. Kwasnik, Esquire and Kwasnik, Rodio, Kanowitz & Buckley, P.C.

**SIMANDLE**, District Judge:

## I.    INTRODUCTION

Third-Party Plaintiffs, Hope Now Modifications, LLC, Hope Now Financial Services Corp., Nick Puglia, and Salvatore Puglia, (collectively hereinafter referred to as "Hope Now" or as "Hope Now parties"), who are also Defendants in this action brought by the Federal Trade Commission ("FTC"), filed a Third-Party Complaint against Third-Party Defendants Michael W. Kwasnik, Esquire and Kwasnik, Rodio, Kanowitz & Buckley, P.C., (collectively hereinafter referred to as "Kwasnik" or as "Kwasnik parties"), for legal malpractice, which they allege led to the FTC suit against them.  Subsequently, the FTC filed an Amended Complaint asserting direct claims against the Kwasnik parties for the first time.  The Hope Now parties answered the Amended Complaint and several Cross-Claims against the Kwasnik parties, which supersede their Third-Party Complaint.

The matter before the Court is a motion by Kwasnik for summary judgment as to Hope Now's Third-Party Complaint[1] [Docket

---

[1] The movants categorize the Hope Now parties' claim as a Third-Party Complaint, but they are mistaken because the Third-Party Complaint is superceded by Hope Now's Cross-Claims.  Both the Third-Party Complaint and their Cross-Claims contain identical allegations, so the Court will properly refer to Hope Now's operational pleading, their Cross-Claims.  The present

Item 94] which Hope Now has not opposed.  Kwasnik argues that the
Hope Now parties' failure to serve a proper affidavit of merit in
support of their legal malpractice claim, as required by New
Jersey law pursuant to N.J. Stat. Ann. § 2A:53A-26 to -29 (West
2010), should result in the Court's dismissal of Hope Now's legal
malpractice claim and the related claim for contribution and
indemnification with prejudice.  For the following reasons, the
Court will grant the Kwasnik parties' unopposed motion for
summary judgment and the Third-Party Complaint and the Cross-
Claims of Hope Now parties against the Kwasnik parties will be
dismissed with prejudice.

## II.   BACKGROUND

Hope Now's troubles began in March 2009, when the New Jersey
Attorney General's Office, and subsequently the FTC, brought
civil actions accusing them of participating in unfair and
deceptive practices through their mortgage loan modification
business.  According to the Hope Now parties' Cross-Claims
[Docket Item 68], in August 2008 Salvatore Puglia formed Hope Now
Modifications LLC and later formed Hope Now Financial Services
Corporation.  (Cross-cl. ¶ 11.)  Puglia formed the Financial
Services Corporation to provide loan modification services to

_____

motion is construed as the Kwasnik parties' motion for summary
judgment upon the Hope Now parties' Cross-Claims.

3

consumers, which he began providing in October 2008.  (Id.)  The New Jersey Department of Banking and Insurance sent Puglia a letter notifying him that in order for him to perform mortgage modifications he would need to acquire a debt adjuster's license because he was not an attorney.  (Id. ¶ 12.)  Puglia contacted the Kwasnik Firm, and spoke to Howard Kanowitz, one of the partners, to learn what he would need to do to lawfully maintain a loan modification business.  (Id. ¶ 13.)

Puglia met with both Kanowitz and another partner Michael Kwasnik.  (Id. ¶ 13.)  Puglia presented his business model to both partners and retained their services as legal counsel for his loan modification business.  (Id. ¶ 14.)  He paid them $33,000 for legal services.  (Id.)  In December 2008, when all three gentlemen met again, Kwasnik explained that he was interested in helping Puglia and his Corporation, and provided Puglia with a flow-chart illustrating how Puglia would be able to operate the business without acquiring a debt adjuster license.  (Id. ¶ 15.)  Before the close of this meeting, all three gentlemen forged a partnership, which Kwasnik claimed was essential for Puglia's business to be in full compliance with all state and federal regulations.  (Id. ¶ 16.)  As part of this partnership, Kwasnik sub-leased office space from Hope Now at its office in Cherry Hill, New Jersey.  (Id. ¶ 18.)

4

Both the Kwasnik Firm and Hope Now had important roles in this partnership.  Hope Now alleges that Kwasnik hired a Hope Now employee to collect all customer payments for mortgage modifications and deposited them into the Kwasnik Firm account, and fees were shared by Hope Now and Kwasnik from this account in accordance with Kwasnik's business plan.  (<u>Id.</u> ¶¶ 19, 21.)  Hope Now employees continued to negotiate with lenders, recruit more customers and perform other office services.  (<u>Id.</u>)  Hope Now also had its independent contractors send information to customers, which Hope Now alleges included a retainer letter for the Kwasnik Firm that customers were required to sign and remit payment in order to receive assistance with mortgage modifications.  (<u>Id.</u> ¶ 20.)

After Puglia first notified Kwasnik of the New Jersey Attorney General's action against Hope Now, Kwasnik allegedly assured Puglia that the injunction action was only minor, and that the matter would be resolved for the better without business interruption.  (<u>Id.</u> ¶ 26.)  However, shortly thereafter, Hope Now contends that Kwasnik informed Puglia that the firm was withdrawing from the partnership with Hope Now because of the pending actions against the business.  (<u>Id.</u> ¶ 26.)  After the FTC filed its action against Hope Now, Hope Now brought the action against Kwasnik arguing that their legal advice and business

5

propositions led to the FTC and New Jersey Attorney General actions.  (Id. ¶¶  1, 22.)

Hope Now filed a Third-Party Complaint against Kwasnik on May 13, 2009 [Docket Item 30].  Kwasnik subsequently filed an Answer to the Third-Party Complaint on June 4, 2009 [Docket Item 42].  On July 1, 2009 Hope Now filed a timely affidavit of merit subscribed by attorney Walter Weir, Jr.[2] [Docket Item 47].  The applicable portion of Hope parties' affidavit of merit is found in Paragraph 2, which reads:

> 2. Based upon my review of the Complaint of Plaintiff, Federal Trade Commission, and assuming that all the allegations ser forth therein are true, I hereby state, pursuant to N.J.S.A. 2A:53A-27, that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited in the practice or work that is the subject of Plaintiff's Complaint fell outside acceptable professional standards of practice.

[Docket Item 47].  At the time the affidavit was prepared and submitted, the FTC's Complaint did not include any allegations against Kwasnik.  The "practice or work that is the subject of [FTC's] Complaint" is the work of the Hope Now parties themselves, since the Kwasnik Firm was not even named by the FTC at that time.  Subsequently, Kwasnik filed the instant motion for

---

[2] Curiously, in the affidavit of merit, Mr. Weir claims to have been "continuously certified by the United States District [C]ourt for the District o[f] New Jersey as a Certified Civil Trial Attorney since 1982."  [Docket Item 47 ¶ 1.] This Court maintains no such certification of civil attorneys, but the Supreme Court of New Jersey does.

summary judgment on May 10, 2010, arguing that Hope Now failed to submit a proper affidavit of merit under N.J. Stat. Ann. § 2A:53A-27 [Docket Item 94].  Hope Now does not oppose the Kwasnik parties' motion for summary judgment.

After the FTC filed its "First Amended Complaint for Permanent Injunction and other Equitable Relief" on September 14, 2009 [Docket Item 61], naming the Hope Now parties and the Kwasnik parties as direct defendants, the Hope Now Defendants filed their Answer and Cross-Claims against Kwasnik and the Kwasnik Firm on October 7, 2009 [Docket Item 68].  These Cross-Claims repeat the same allegations of legal malpractice as were previously alleged in the Hope Now's Third-Party Complaint.[3] Count I of the Cross-Claims thus again alleges legal malpractice and Count II seeks contribution and indemnification based upon the legal malpractice of Kwasnik and the Kwasnik Firm.

The present motion, while referring to the Third-Party Complaint, is actually seeking the dismissal of the Cross-Claims asserted in Hope Now's Answer to the FTC's First Amended Complaint.  The allegations of professional malpractice made by Hope Now against Kwasnik are identical in both documents, and the

---

[3] The Hope Now parties had also filed an Amended Third-Party Complaint on August 3, 2009 [Docket Item 53], repeating the allegations of professional negligence against Kwasnik and the Kwasnik Firm.  The Amended Third-Party Complaint was likewise superseded by the Hope Now parties' Cross-Claims.

Cross-Claims supersede the Third-Party Complaint and Amended Third-Party Complaint as the operative pleading.  The moving parties' Memorandum of Law likewise references the Third-Party Complaint and the Cross-Claims interchangeably.  Therefore, the Court construes the present motion of the Kwasnik parties as seeking dismissal of the Cross-Claims of the Hope Now parties, as well as the superseded Third-Party Complaint and Amended Third-Party Complaint.

## III. DISCUSSION

### A.   The Affidavit of Merit Requirement and Motions for Summary Judgment

The principal issue on this motion for summary judgment is whether Hope Now's affidavit of merit is sufficient as a matter of law.  The Kwasnik parties moved for summary judgment based on Hope Now's failure to deliver an adequate affidavit of merit.  Under New Jersey law, however, such failure to deliver a proper affidavit within the statutory time period is considered tantamount to failing to state a cause of action upon which relief can be granted and, thus, is properly analyzed pursuant to Rule 12(b)(6), Fed. R. Civ. P.  See Ferreira v. Rancocas Orthopedic Assocs., 836 A.2d 779, 780 (N.J. 2003).  Therefore, the Court will look to allegations contained in the Amended Complaint, and "undisputedly authentic documents that a defendant attaches as an exhibit" to the motion.  Pension Benefit Guar.

8

<u>Corp. V. White Consol. Indus., Inc.</u>, 998 F.2d 1192, 1196 (3d Cir. 1993); <u>see</u> <u>also</u> <u>Sands v. McCormick</u>, 502 F.3d 263, 268 (3d Cir. 2007). Here, Hope Now's affidavit of merit is attached to the Kwasnik parties' motion for summary judgment as an exhibit, so the Court considers it in addition to Hope Now's Cross-Claims.

Moreover, the mere fact that Hope Now did not oppose this motion is not dispositive. The Third Circuit Court of Appeals has found that unopposed motions to dismiss and summary judgment motions are not automatically granted merely because they are uncontested by the nonmoving party. <u>See</u> <u>Stackhouse v. Mazurkiewicz</u>, 951 F.2d 29, 30 (3d Cir. 1991); <u>see</u> <u>also</u> <u>Anchorage Assocs. v. Virgin Islands Bd. Of Tax Review</u>, 922 F.2d 168, 175 (3d Cir. 1990). In the interest of justice, this Court must still examine whether dismissal or summary judgment is warranted. <u>See</u> <u>Lugo-Vazquez v. Grondolsky</u>, No. 08-986, 2010 WL 2287556, at *1 (D.N.J. June 2, 2010).

**B.    Affidavit of Merit Requirement**

Section 2A:53A-27 of the New Jersey Statutes imposes a set of conditions precedent to maintaining a professional malpractice action under New Jersey law: (1) that the plaintiff obtain an affidavit from an appropriate, licensed expert attesting to the "reasonable probability" of professional negligence; and (2) that the plaintiff provide the defendant with the affidavit within

9

sixty days of the filing of the answer or, for good cause shown,
within an additional sixty day period.  Ferreira v. Rancocas
Orthopedic Assocs., 836 A.2d 779, 781-82 (N.J. 2003) (citing N.J.
Stat. Ann. § 2A:53A-27) (West 2010)).  Failure to deliver a
proper affidavit within the statutory time period is considered
tantamount to failing to state a cause of action and, therefore
mandates dismissal of the complaint with prejudice.[4]  Id. at 780
(citing Cornblatt, P.A. v. Barow, 708 A.2d 401, 412-13 (N.J.
1998)).

There is no precedent that identifies the requisite
components of a legal malpractice affidavit of merit, but in

---

[4] New Jersey's Affidavit of Merit Statute, N.J. Stat. Ann. §
2A:53A-27 (West 2010), provides, in pertinent part:

> In any action for damages for personal injuries, wrongful
> death or property damage resulting from an alleged act of
> malpractice or negligence by a licensed person in his
> profession or occupation, the plaintiff shall, within 60
> days following the date of filing of the answer to the
> complaint by the defendant, provide each defendant with an
> affidavit of an appropriate licensed person that there
> exists a reasonable probability that the care, skill or
> knowledge exercised or exhibited in the treatment, practice
> or work that is the subject of the complaint, fell outside
> acceptable professional or occupational standards or
> treatment practices.  The court may grant no more than one
> additional period, not to exceed 60 days, to file the
> affidavit pursuant to this section, upon a finding of good
> cause.

N.J. Stat. Ann. § 2A:53A-27 (West 2010).

legal malpractice cases courts consider legislative intent and the statutory language of the Affidavit of Merit Statute.  See generally Lacrosse v. Klehr, Harrison, Harvey, Branzburg & Ellers, LLP, --- A.2d --- , 2010 WL 2346341 (N.J. Super. Ct. App. Div. June 14, 2010) (discussing the body of New Jersey legal malpractice case law against attorneys and law firms and the affidavits of merit requirement in these claims).  Because the statute was implemented to require plaintiffs to make a threshold showing that their malpractice claims have merit, naming or referring to the malefactor and their alleged malpractice in the body of the affidavit is essential to a plaintiff in order to show that his or her claim has merit.

     The purpose for which the New Jersey legislature enacted the statute was to remove "frivolous lawsuits" early on from the adjudicative process.  Ferreira, 836 A.2d at 782.  Moreover, the statute serves the additional purpose of "ensuring that plaintiffs with meritorious claims will have their day in court." Id. at 783 (quoting Hubbard v. Reed, 774 A.2d 495, 500 (N.J. 2001)).  The New Jersey Affidavit of Merit Statute applies to malpractice claims asserted in federal court pursuant to diversity jurisdiction, Chamberlain v. Giampapa, 210 F.3d 154, 157 (3d Cir. 2000), so this requirement also applies to professional negligence claims arising under New Jersey law

within the supplemental jurisdiction of this Court under 28 U.S.C. § 1367, as in the present case. Likewise, this requirement applies to allegations of malpractice or professional negligence contained in a third-party complaint. Nagim v. N.J. Transit, 848 A.2d 61, 68 (N.J. Super. Ct. Law Div. 2003).

Kwasnik argues that summary judgment is warranted for Hope Now's failure to satisfy the statutory requirements for submitting a proper affidavit of merit under New Jersey law. Specifically, Kwasnik argues that the affidavit does not contain any substantive facts that could support their legal malpractice allegation [Docket Item 94 at 4]. For example, the Kwasnik parties point out, that none of the them were mentioned in the FTC Complaint, which is what Hope Now refers to in the affidavit as the basis for their legal malpractice claim [Id.]. Therefore, Kwasnik argues that Hope Now's affidavit fails to identify "anyone as being the professional who deviated from professional standards" [id. at 5], which is a central requirement of the Statute.

In this case, the Hope Now parties did not strictly comply with the Affidavit of Merit Statute because they failed to include what is required by the Statute: naming a negligent party and the basis for the negligence claim. The affidavit does not name or contain the word "Defendants," which if present, would

12

indicate that Third Party Defendants were the party for which
Plaintiffs constructed the affidavit of merit [Docket Items 47].
Rather, the affidavit only refers to the original FTC Complaint,
which does not contain any allegations against the Kwasnik
parties [Docket Item 1].  In fact, the Kwasnik parties were not
named as Defendants in the FTC action until the FTC filed its
Amended Complaint on September 14, 2009 [Docket Items 1, 61],
several months after Mr. Weir endorsed the affidavit of merit on
June 15, 2009.  Hope Now has furnished no supplemental or amended
affidavit of merit.  The affidavit of merit therefore simply
fails to address the alleged malpractice of the Kwasnik parties.
The failure to include the names of the accused or the nature of
the malpractice in the affidavit is equivalent to alleging legal
malpractice without designating who was allegedly negligent or
what they did.  See generally Lacrosse, 2010 WL 2346341, at *8-
15.  Under New Jersey law, this is akin to failing to state a
malpractice claim.

        1.   The "Common Knowledge" Exception

    Notwithstanding the above, a complaint will not be dismissed
if the plaintiff can show that an affidavit of merit is not
required because the malpractice claim is exempt from the statute
under the "common knowledge" exception.  See Hubbard, 774 A.2d
495 (holding that an affidavit of merit is not required of a

13

plaintiff in "common knowledge" cases where expert testimony is not required at trial).

In 2001, the Supreme Court of New Jersey announced the "common knowledge" exception to the Affidavit of Merit Statute in Hubbard. Id. The Court found that an affidavit of merit is not required in malpractice cases where expert testimony is not needed in order to explain that the care, skill or knowledge of the licensed medical professional fell outside of acceptable professional, occupational standards or treatment practices. Id. at 497, 500 (citing N.J. Stat. Ann. § 2A:35A-27) (West 2010)). In fact, when the circumstances of the malpractice suit demonstrate that an expert would be no more qualified than a non-expert in regards to attesting to the merit of the claims, then an affidavit of merit is not required. Id. Therefore, should the threshold of merit be "readily apparent" from what the plaintiff alleges in his or her complaint, there is no need for an affidavit of merit. Id. The Court further explained that the doctrine applies where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a Defendant's negligence without the benefit of the specialized knowledge of experts." Id. at 499 (quoting Estate of Chin v. Saint Barnabas Med. Ctr., 734 A.2d 778, 785 (N.J. 1999)); see also Brach, Eichler, Rosenberg,

14

Silver, Bernstein, Hammer & Gladstone P.C. v. Ezekwo, 783 A.2d 246, 253 (N.J. Super. Ct. App. Div. 2001) ("[T]he party asserting malpractice must, under New Jersey case law, present expert testimony that establishes the standard of care against which the attorney's actions are to be measured.").

New Jersey law requires plaintiffs bringing legal malpractice claims to show that (1) the duty of care existed based upon the presence of an attorney-client relationship, (2) that defendant breached that duty, and (3) proximate causation. Tarutis vs. Ackerman, No. A-5191-06T1, 2008 WL 1987600, at *2 (N.J. Super. Ct. App. Div. May 9, 2008) (citing Conklin v. Hannoch Weisman, 678 A.2d 1060 (N.J. 1996)). Because of these prima facie requirements, plaintiffs will usually need to present expert testimony specifically to establish the duties a lawyer owes to his or her client and a definition and explanation of the breach. Id. (citing Stoeckel v. Twp. of Knowlton, 902 A.2d 930 (N.J. Super. Ct. App. Div. 2006), certif. denied, 909 A.2d 724 (2006)); see also Rosenberg v. Cahill, 492 A.2d 371, 374 (N.J. 1985).

There are some exceptions to the requirement of expert testimony to establish legal malpractice. For example, New Jersey courts have found that no expert testimony and therefore no affidavit of merit were required when an attorney failed to

15

cite any legal authority in support of his client's claim, failed to submit a brief, and misrepresented the state of the case, Sommers v. McKinney, 670 A.2d 99, 104 (N.J. Super. Ct. App. Div. 1996), or when an attorney failed to file an action within the controlling statute of limitations, see Brizak v. Needle, 571 A.2d 975, 983-84 (N.J. Super. Ct. App. Div.), certif. denied, 584 A.2d 230 (1990).  In both of these cases, the courts found that the attorneys' negligence was readily apparent to even a lay person with ordinary understanding and experience.  There was no need for an expert's specialized knowledge to identify the legal malpractice.  However, recognizing that plaintiffs will need expert testimony in a majority of these cases, the Supreme Court of New Jersey emphasized that plaintiffs will need to provide affidavits of merit most of the time.  Hubbard, 774 A.2d at 499. Thus, the "common knowledge" exception should only be construed narrowly.  Id.

> 2.   Application of the "common knowledge" exception to Hope Now parties' Legal Malpractice Claim

Even though Hope Now did not submit an opposition brief to Kwasnik's motion for summary judgment, the Court will address whether the Hope Now parties' legal malpractice claim against the Kwasnik parties would fall under the "common knowledge" exception to the Affidavit of Merit Statute.  The complexity and scope of Hope Now's legal malpractice claim establish that their claim

16

does not fall under the "common knowledge" exception, as the Hope
Now parties seem to have acknowledged when they submitted such an
affidavit.  Identifying the applicable standard of care for an
attorney that simultaneously acts as a business partner to a
client is complicated and as such is not within the common
knowledge of a lay person.  This is not an obvious legal
malpractice case where negligence is within the ken of a jury.
Instead Hope Now claims that Kwasnik provided faulty legal advice
regarding the complex legal requirements governing loan
modification businesses.

This complex claim is in contrast to an attorney's failure
to meet a deadline or failure to make any legal argument on
behalf of his client.  Even the Hope Now parties, using their own
experience and common knowledge, were allegedly unaware of
Kwasnik's alleged malpractice until after the FTC action
questioning the lawfulness of their business endeavors — which
Hope Now alleges they undertook together as partners.[5]  This
unusual arrangement, where the Kwasnik Firm allegedly served as
Hope Now's lawyers and business partners also blurs the line of a
normal attorney-client relationship.  A lawyer operating in such

---

[5] The inapplicability of the "common knowledge" exception to
Hope Now's legal malpractice claim is consistent with existing
New Jersey precedent.  See, e.g., Tarutis, 2008 WL 1987600
(holding that plaintiffs will usually need expert testimony in
legal malpractice claims to establish the duties a lawyer owes to
his or her client).

a dual capacity also owes special ethical duties to the client
under the New Jersey Rules of Professional Conduct.  See, e.g.,
N.J. RPC 1.8(a) (restricting conditions in which lawyer may enter
business relationship with client).  Whatever the relationship
between the Hope Now parties and the Kwasnik Firm, it suffices to
say, for present purposes, that such professional duties and
breaches are subject to the affidavit of merit requirement under
N.J. Stat. Ann. § 2A:53A-27, because they are beyond the ken of a
lay juror.  Simply put, this legal malpractice claim does not
fall under the "common knowledge" exception due to the complexity
of the New Hope/Kwasnik arrangement, and this is illustrated by
the Hope Now parties' own implicit admission when they submitted
the affidavit.

### 3.   The Doctrine of Substantial Compliance

In addition to the "common knowledge" exception to the
Affidavit of Merit Statute, New Jersey recognizes the substantial
compliance exception.  A party may invoke this exception where
the circumstances are such that technical defects would otherwise
defeat a valid claim.  Ferreira v. Rancocas Orthopedic Assocs.,
836 A.2d 779, 783 (N.J. 2003) (citing Cornblatt v. Barow, 708
A.2d 401 (N.J. 1998)).  In other words, a complaint will not be
dismissed if the plaintiff can establish that he or she has
substantially complied with the Affidavit of Merit Statute.  Id.

18

(citing Palanque v. Lambert-Wooley, 774 A.2d 501 (N.J. 2001)

(citations omitted)); see also Fink v. Thompson, 772 A.2d 386

(N.J. 2001) (finding substantial compliance by Plaintiff even

though he failed to name defendant doctor in timely served

affidavit of merit and expert reports that focused on conduct of

defendant and his relationship to malpractice case).

For a plaintiff to avoid technical rejection of a legitimate

claim, it is plaintiff's burden to show:

> (1) the lack of prejudice to the defending party; (2) a
> series of steps taken to comply with the statute
> involved; (3) a general compliance with the purpose of
> the statute; (4) a reasonable notice of [the] claim;
> and (5) a reasonable explanation why there was not
> strict compliance with the statute.

Id. (quoting Galik v. Clara Maass Medical Center, 771 A.2d 1141,

1144-46 (N.J. 2001)).  Moreover, a legal malpractice complaint

will be dismissed without prejudice if a plaintiff shows there

are extraordinary circumstances for noncompliance.  Id. (citing

Palanque, 774 A.2d at 505-06 (noting that attorney inadvertence

does not constitute an extraordinary circumstance, i.e. failure

to file a timely affidavit of merit)).

In this case, Hope Now failed to oppose the motion for

summary judgment and so the Court has no evidence of Hope Now's

efforts to substantially comply with the statute, nor an

explanation for why they failed to comply, nor any suggestion of

extraordinary circumstances justifying their non-compliance.[6]
There is also no evidence that the Hope Now parties supplemented
the deficient affidavit of merit.  The substantial compliance
exception is therefore inapplicable.  Hope Now having failed to
submit an adequate affidavit as required by law, and there being
no applicable exception to the requirement, the Hope Now parties'
Third-Party Complaint, and their Cross-Claims, will be dismissed
with prejudice.

### C. Allegations in Third-Party Complaint and Cross-Claims for Contribution, Indemnification and Various Damages

As noted above, Count II of the Third-Party Complaint,
identical to Count II of the subsequent Cross-Claims of the Hope
Now parties against the Kwasnik parties, seeks contribution and
indemnification of Hope Now's liability to the FTC arising from
Kwasnik's professional negligence.  Accordingly, the allegations
in Count II likewise required Hope Now's compliance with the
Affidavit of Merit Statute, which is absent here.  The Hope Now
parties' failure to submit a proper affidavit of merit is
equivalent to failing to state a cause of action against the
Kwasnik parties, and their Third-Party Complaint is dismissed

---

[6] In a related vein, the present circumstances do not support
a waiver based on "good faith effort" under N.J.S.A. § 2A:53A-
41(c), see Ryan v. Renny,  --- A.2d --- , 2010 WL 2851288 (N.J.
July 22, 2010); this is not a case where the proponent of the
professional malpractice claim was unable to procure a qualified
affiant.

with prejudice because no extraordinary circumstances existed to justify their noncompliance.  As such the Court grants the Kwasnik parties' motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons, the Kwasnik parties' motion for summary judgment, characterized by the Court under New Jersey law as a motion to dismiss, will be granted and Hope Now parties' Third-Party Complaint, and their equivalent in the Cross-Claims of the Hope Now parties against the Kwasnik parties, will be dismissed with prejudice.  The accompanying Order shall be entered.


**July 27, 2010**                    **s/ Jerome B. Simandle**
Date                                 JEROME B. SIMANDLE
                                     United States District Judge